**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Claus Carl HOCK, Defendant–Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael MEIXNER, Defendant–
Appellant.**

**Nos. 90–6048, 91–5008.**

United States Court of Appeals,
Eleventh Circuit.

July 14, 1993.

Paul D. Lazarus, Miami, FL, for defendant-appellant in No. 90–6048.

Linda Collins Hertz, Anne M. Hayes, Cheryl A. Bell, Asst. U.S. Atty., Miami, FL, for plaintiff-appellee in No. 90–6048.

Kenneth M. Swartz, Asst. Federal Public Defender, Miami, FL, for defendant-appellant in No. 91–5008.

Cheryl A. Bell, Asst. U.S. Atty., Miami, FL, for plaintiff-appellee in No. 91–5008.

Before ANDERSON and EDMONDSON, Circuit Judges, and DYER, Senior Circuit Judge.

---

PER CURIAM:

Appellants Claus Hock and Michael Meixner were convicted of drug trafficking offenses. Hock appeals the district court's evidentiary rulings at Hock's trial. Hock and Meixner challenge the district court's determination, for sentencing purposes, that five kilograms of cocaine were involved in the offenses. We affirm.

I. *Background*

Meixner owned a restaurant in Miami Beach. Hock visited Meixner in March 1990 and resided for several weeks in Meixner's Miami Beach apartment. During that time, Special Agent Camacho of the Drug Enforcement Administration (DEA) posed as a drug merchant and recorded a series of telephone conversations with Meixner. In those talks, Meixner negotiated to buy from Camacho up to 50 kilograms of cocaine, in five-kilogram installments. Meixner spoke of a plan to distribute cocaine in Europe. Meixner also told Agent Camacho that he was negotiating for a German man who would supply the funds to buy the drugs. Meixner told Camacho this German was residing in his (Meixner's) apartment.

Meixner and the undercover agent eventually agreed to a sale of two kilograms for $34,000. Police observed Meixner entering his apartment and emerging with a bag containing $17,000 in cash. Meixner met Camacho at the Miami Beach Marina with the $17,000, only half the agreed amount. Camacho refused Meixner's invitation to go to Meixner's apartment to get the rest of the money and instead simply gave Meixner one kilo for Meixner's $17,000. As Meixner drove away, agents moved in and arrested him.

A police witness testified that the police tried to draw Hock out in to the open to arrest him by asking Meixner to call "a party involved in this," or "the money person involved in this transaction." Police asked Meixner to ask the money person to come pick up Meixner and to bring the money for the other kilo. Meixner did call Hock, but

Hock refused to leave Meixner's apartment. Meixner told the police there was $25,000 cash in his apartment and gave police his consent to search the premises.

The police arrested Hock in Meixner's apartment and asked Hock where the money was. Hock initially feigned ignorance; but when the police told him about Meixner's arrest and that they knew the money was there, Hock admitted the money was in an air conditioning duct.

Meixner pled guilty to charges of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2 and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846.

Hock was indicted for the same offenses, but his case was tried to a jury. At trial, Hock sought to exclude a police officer's testimony about Meixner's post-arrest call to Hock, but the district court overruled the objection. Hock testified at his trial that he gave $17,000 to Meixner but only so that Meixner could purchase a liquor license for Meixner's restaurant. Hock was convicted on both charges.

At sentencing, the district court found Hock and Meixner were responsible for at least five kilograms of cocaine, based on the amounts discussed in the Meixner–Camacho conversations. The district court rejected defendants' argument that they only had money enough to buy 2.5 kilos, citing Hock's general facility for obtaining funds. These appeals followed.

II. *Discussion* [1]

Hock contends that the police officer's testimony about Meixner's post-arrest phone call was an implied hearsay statement by Meixner that he was purchasing drugs for Hock. Hock says admission of this hearsay evidence violated his Sixth Amendment confrontation rights because he could not con-

---

1. Having reviewed the record, we conclude there is no merit in Hock's arguments about other evidentiary rulings nor in the argument that

Hock's and Meixner's sentences are based on an improper determination of the amount of cocaine involved.

front the "declarant," Meixner.[2] The government contends that the evidence about the phone call was not hearsay or, even if it was hearsay, its admission was harmless error in view of the other evidence against Hock.

Even assuming for the sake of argument that the admission of the police testimony about the call was confrontation error, we think it was harmless beyond a reasonable doubt. *See United States v. Turner*, 871 F.2d 1574, 1581–82 (11th Cir.1989). Independent evidence showed that Hock was, in fact, "involved" as the "money person" in the Meixner drug purchase. Hock told the police that he had given Meixner the $17,000. And, Hock testified at his trial that he gave Meixner the $17,000 (but only for legitimate purposes, he said). Hock also matched perfectly Meixner's description to Agent Camacho of his co-conspirator: Hock was German, male, and living in Meixner's apartment. And, when the police questioned him at Meixner's apartment, Hock told the police where to find the $25,900 stashed in the apartment.

Because independent evidence showed overwhelmingly that Hock supplied the money to Meixner, we think the evidence about the phone call that implied Hock was "involved" or was Meixner's "money person" was cumulative and only corroborated other evidence presented by the prosecution. *Id.* No reasonable probability exists that the disputed evidence determined the outcome of this criminal trial; other evidence supported the conviction beyond a reasonable doubt, and any confrontation error was harmless. *See id.*, 871 F.2d at 1582.

III. *Conclusion*

The judgment and sentences of the district court are AFFIRMED.

---

**2.** Meixner plead guilty to the charges against him and asserted his Fifth Amendment right to re-main silent to avoid testifying at Hock's trial.